IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID L. BRADFORD,          )
                                    )
           Petitioner,     )
                                    )
vs.                           )      **Case No. 19-cv-1022-DWD**
                                    )
UNITED STATES OF AMERICA,   )
                                    )
           Respondent.    )

## MEMORANDUM AND ORDER
## ON PETITION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
## UNDER 28 U.S.C. § 2255

**DUGAN, District Judge:**

This matter comes before the Court on Petitioner David L. Bradford's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).  For the following reasons, the Motion is **DENIED**.

## Background

On August 8, 2016, following a five day jury trial, a jury found Petitioner David L. Bradford guilty on six counts of the Second Superseding Indictment in *United States v. David L. Bradford*, SDIL Case No. 15-30001-DRH-1 (15-30001, Doc. 235, 240) (hereinafter referred to as the "Criminal Case").[1]  Bradford was found guilty of conspiracy to distribute and possess with intent to distribute controlled substances (Count 1), transfer of a firearm of a previously convicted felon (Count 3), distribution of cocaine (Counts 5

---

[1]The Court is permitted to take judicial notice of Petitioner's criminal proceedings.  *See Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) ("[A] court is of course entitled to take judicial notice of judicial proceedings."); *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996) (The Court "has the power, in fact the obligation, to take judicial notice" of relevant court proceedings).

& 6), possession with intent to distribute marijuana (Count 7) and unlawful possession of a firearm by a previously convicted felon (Count 8) (*Id*.)  Bradford was acquitted on Count 2 for possession of a firearm in furtherance of a drug trafficking crime (*Id*.)

On January 11, 2017, the Court[2] sentenced Bradford to a term of 420 months on each of Counts 1, 6, and 8; a term of 360 months on Count 5; and a term of 120 months on each of Counts 3 and 7, all terms to be served concurrently, for a total term of imprisonment of 420 months, to be followed by 8 years of supervised release  (Criminal Case, Doc. 274).  The Seventh Circuit affirmed Bradford's sentence on September 19, 2018 in *United States v. Bradford*, 905 F.3d 497 (7th Cir. 2018).  On September 18, 2019, Bradford, through counsel, timely[3] filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 1).  He filed a Memorandum in Support (Doc. 8) and sealed exhibits (Doc. 10).  The Government responded (Doc. 22), to which Bradford replied (Doc. 27).

## The Petition

Bradford's petition advances an ineffective assistance of counsel claim against his trial counsel, John D. Stobbs, II.  Bradford argues that his counsel's assistance was ineffective in violation of the Sixth Amendment, for no less than four reasons: (1) Stobbs did not object or seek a limiting instruction in relation to various witness testimony of Bradford's alleged unrelated bad character evidence; (2) Stobbs did not investigate the case file; (3) Stobbs did not conduct due diligence on the Government's witnesses and

---

[2]The undersigned was not Bradford's sentencing judge.
[3]*See* 28 U.S.C. § 2255(f)(1).

2

anticipated testimony prior to trial; and (4) Stobbs did not impeach the Government's witnesses by introducing their prior inconsistent statements as memorialized in investigation reports from the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") (Doc. 8). Bradford argues that these alleged wrongdoings prejudiced Bradford: (1) by permitting the jury to wrongfully consider prejudicial unrelated bad acts when convicting Bradford; (2) by providing the sentencing judge with additional evidence of violence so that the sentencing judge found it appropriate to add an extra five years to Bradford's sentence; and (3) by limiting review of the unrelated bad acts testimony to a "plain-error" standard of review on appeal (*Id.*).

In his reply, Bradford also provided his affidavit (Doc. 27-1), raising additional grievances against Stobbs, including, that: Stobbs refused to use any of the material Bradford provided during trial (Doc. 27-1, ¶¶ 8, 11), Stobbs insulted Bradford by calling him "stupid" and a "gun nut" (Doc. 27-1, ¶¶ 9, 17), Stobbs was friendly with the Government's attorney and Agent Adam Ulery (Doc. 27-1, ¶ 12), Stobbs indicated that he would not assist Bradford if Bradford chose to testify at trial, resulting in Bradford electing not to testify (Doc. 27-1, ¶ 20), and Stobbs failed to present any mitigating factors at sentencing while also acknowledging that he "dropped the ball" on Bradford's case (Doc. 27-1, ¶¶ 21-22). Bradford also alleges that he spoke with the Court about Stobbs' performance, both during the trial, and at sentencing (Doc. 27-1, ¶15). The trial transcripts reveal that the Court spoke with Bradford at the conclusion of day 2 of his trial to address Bradford's concerns (Criminal Case, Doc. 249, pp. 367-368). The Court specifically told Bradford:

And so a lawyer can consider the questions his client wants him to ask. He certainly isn't required to ask those questions. He has to make a decision, a professional decision whether to ask those questions, and it's not my place to second guess that lawyer.

I think he's doing a fine job. I think his cross-examinations have been certainly within the standard as far as defense of a criminal case is concerned. I don't see any problem. I don't see any -- I don't see any substandard way in which he's defending you. So I personally don't see a problem.

I mean I can -- because of the fact that so far the evidence is -- there's a substantial amount of evidence against you, and I understand why you'd be concerned about how the trial is going. I don't see any reason for you to be concerned about Mr. Stobbs' performance as your lawyer. But it's not unusual for me to hear a defendant say, *Well, I want him to ask these questions or I want him to ask this question or that question. I want him to call this witness or call that witness when the time comes*, things like that.

I have no problem with you putting your concerns on the record, but, you know, for example, I'm not going to tell Mr. Stobbs, *You have to ask the questions Mr. Bradford wants you to ask*.

(*Id*.). Later at sentencing, Bradford asked for a new attorney to be appointed on appeal (Doc. 27-1, ¶¶ 15, 23-25). His request was granted (Criminal Case, Doc. 280). In sum, Bradford presents these additional grievances to argue that Stobbs' negative opinions of Bradford tainted his performance at trial and unfairly colored Bradford to the jury and the judge as a bad person (Doc. 27-1, ¶ 17).

With its response, the Government provided an Affidavit from Attorney Stobbs (Doc. 22-2). Both the Government and Stobbs argue that Stobbs' performance was not deficient, and that he properly exercised his trial strategy in not objecting to the highlighted testimony at trial (Doc. 22, p. 16). The Government and Stobbs point to Defendant's acquittal on Count 2 as evidence of Stobbs' effectiveness. The Government

further argues that Stobbs was effective in cross-examining the Government's witnesses, and that any objections to the bad act testimony would have been overruled because the testimony was (a) directly relevant to the charged crimes and (b) was not substantially outweighed by the danger of unfair prejudice (Doc. 22, pp. 13, 30-31)[4].

The Government also argues that Stobbs would not have been able to present the ATF investigation reports to the jury because the reports themselves were inadmissible hearsay, and further the statements were not blatantly inconsistent with the witnesses' testimony (Doc. 22, pp. 29-30). Moreover, the Government asserts that any alleged failure in trying to investigate the involvement of two additional co-conspirators "B" and "unidentified female" would have been fruitless, as the Government had not identified the individuals and/or Bradford would have had the requisite information to inform Stobbs of their identities (Doc. 22, pp. 31-32). Finally, the Government acknowledges that the sentencing judge was not limited by the trial testimony during sentencing but was permitted to consider any evidence of Bradford's prior bad acts – whether related or unrelated to Bradford's charges (Doc. 22, p. 34).

## Legal Standard

Section 2255 permits prisoners to petition their sentencing court for relief from their sentence if the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that

---

[4] These arguments are consistent with the Seventh Circuit's findings that some of the "bad acts" testimony was direct evidence of the charged offenses and therefore properly before the jury. *United States v. Bradford*, 905 F.3d 497, 505-506 (7th Cir. 2018).

the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under section 2255 is "reserved for extraordinary situations" and cannot substitute for direct appeals. *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Therefore, issues not raised on direct appeal are barred from collateral review absent either a showing of good cause for the failure resulting in actual prejudice, or that a refusal to consider the issue would lead to a "fundamental miscarriage of justice." *Id.* Bradford ultimately bears the burden to prove the allegations in his petition warrant relief under section 2255. *Stetson v. United States*, 417 F.2d 1250, 1253 (7th Cir. 1969).

The district court is not required to hold an evidentiary hearing on a section 2255 motion if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Cooper v. United States*, 378 F.3d 638, 641-642 (citing *United States v. Kovic*, 830 F. 2d 680 (7th Cir. 1987)); *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("There is no requirement that the district court grant an evidentiary hearing for every § 2255 petition alleging factual improprieties."); *Aleman v. United States*, 878 F.2d 1009, 1012 (7th Cir. 1989) (citing *Day v. Untied States*, 357 F.2d 907, 910 (7th Cir. 1966) ("'[t]he district court is entitled to consider all the circumstances in the record in determining whether a hearing should be afforded' on a § 2255 petition.")). Based on a review of the filings and the record, this Court concludes that the issues in this case can be resolved on the existing record; an evidentiary hearing is not necessary here.

Bradford's petition raises a claim of ineffective assistance of counsel against his trial counsel. Ineffective assistance of counsel claims may be brought in a collateral

proceeding under section 2255 regardless of whether the petitioner could have raised the claim on direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  To succeed on his ineffective assistance claim, Bradford must ultimately show that "his counsel was deficient, and that this deficiency prejudiced him."  *Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 669 (1984)).  "A failure to establish either deficience or prejudice is fatal to [petitioner's] claim." *Gant*, 627 F.3d at 682; *see Thill v. Richardson*, --F.3d--, 2021 WL 172824, at *5 (7th Cir. May 3, 2021) (Petitioner must establish both *Strickland* prongs).

For the first prong, Bradford must demonstrate that his counsel's representation fell below the objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 669 (1984).  Here, Bradford must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669; *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) ("Defense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.").

For the second prong, counsel's "deficient performance prejudices a defendant's case when it deprives the defendant of a fair trial, such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'")  *Taylor v. Bradley*, 448 F.3d 942, 950 (7th Cir. 2006) (internal citations omitted); *Thill*, 2021 WL 172824, at *6 (quoting *Strickland*, 466 U.S. at 694).  Here, Bradford must demonstrate that Stobbs' conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just

7

result." *Cooper v. United States*, 378 F.3d 638, 642 (7th Cir. 2004) (citing *Strickland*, 466 U.S. at 686).  In other words, Bradford must show that without counsel's alleged defective assistance, the outcome of his case would have been different. *Prewitt*, 83 F.3d at 819.  A "mere possibility of prejudice does not qualify as *actual* prejudice." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (emphasis in original).

## Discussion

Bradford generally raises four issues with Stobbs' performance, in addition to the litany of grievances Bradford raises in his Affidavit.  However, before evaluating whether Stobbs' performance was "professionally competent," the Court first looks to whether Bradford can establish prejudice.  *Taylor*, 448 F.3d at 949 (relying on *Strickland*, 466 U.S. at 694) (the Seventh Circuit consistently adopts the Supreme Court's mandate in *Strickland* of "first examining whether the petitioner has established prejudice and then, if necessary, examining whether counsel's performance fell outside the parameters of what could objectively be considered 'professionally competent.'").

Indeed, "when an ineffectiveness claim may be disposed of on the basis of a lack of prejudice" then "it is unnecessary and undesirable for [the court] to consider the attorney performance facet of the analysis."  *Id.*  This approach prevents courts from conducting an "undesirable . . . 'second trial, this one of counsel's unsuccessful defense' when the case can be resolved on lack of prejudice grounds.'") *Id.* at 949-950 (quoting *Strickland*, 466 U.S. at 697).  Ineffective assistance claims do not prejudice defendants where "overwhelming evidence" of defendant's guilt is presented at trial.  *See Taylor*, 448 F.3d at 950 (collecting cases).

8

Here, Bradford cannot establish prejudice, therefore his ineffectiveness claim must fail.  The evidence presented by the Government of Bradford's guilt was overwhelming so to support the reliability of his guilty verdict, and thus Bradford cannot demonstrate that but for Stobbs' conduct "there was a reasonable probability that the result of the proceeding would have been different."  *Taylor*, 448 F.3d at 951 (internal markings omitted).   The Government presented its case over 5 days and called 13 witnesses (Criminal Case, Docs. 226-235).  The trial transcripts exceeded 1,000 pages (Criminal Case, Docs. 248-252).  The evidence presented by the Government included testimony from four of petitioner's close acquaintances, including his girlfriend, two family members, and Bradford's friend, along with government agents and firearms dealers, linking Bradford to the possession of multiple firearms, multiple drug transactions, and the purchase of firearms, ammunition, and accessories (*see generally*, Criminal Case, Docs. 248-251).

As documented in the trial record, and further summarized in *United States v. Bradford*, 905 F.3d 497 (7th Cir. 2018), the Government opened an investigation of Bradford after a firearms dealer informed ATF of a suspicious firearms purchase in February 2014 involving Bradford, Bradford's girlfriend, Hawkins, and Bradford's friend, Smith.  The firearms dealer testified that the purchase was suspicious, in part, because Bradford and Smith, appeared more interested in the guns, but that Hawkins ultimately made the purchase, with Bradford pitching in a couple hundred dollars (*see generally*, Criminal Case, Doc. 248, pp. 23-48).   The purchased gun was shipped to a store closer to Hawkins' home in Missouri where ATF agents surveilled Hawkins as she picked

up the gun and drove it to Bradford's residence.  Hawkins, Smith, and Bradford were then arrested.

While in custody, Hawkins informed ATF that Bradford kept a 9mm pistol under his pillow, and that two other firearms, along with ammunition were at Bradford's house. As a result of Hawkins' testimony, ATF obtained a warrant to search Hawkins' and Bradford's residences.   ATF agents testified that they recovered indicia of firearm ownership from Bradford's residence, including a box, owner's manual and serial-number tag for a Draco pistol, empty magazines, gun holsters, a gun lock, and miscellaneous firearm parts.   Hawkins eventually surrendered a Draco pistol which matched the serial number on the tag recovered from Bradford's bedroom to ATF.

 Smith began working with ATF as an informant after his arrest and conducted two controlled crack-cocaine buys from Bradford.  Smith further testified that he observed multiple firearms throughout Bradford's residence and a vehicle, and that Smith observed Bradford using one of his firearms to "pistol-whip" an individual in retaliation for stealing marijuana from Bradford.  ATF agents used Smith's testimony to obtain another search warrant for Bradford's home, and ultimately recovered three riffles, a digital scale, and two sandwich baggies, each containing one ounce of marijuana.

Bradford's cousins, Raphael Harris and Jeremy Harris also testified extensively about Bradford's drug business and firearms (*see generally*, Criminal Case Doc. 249, pp. 210-273; Criminal Case, Doc. 251, pp. 81-179).  Specifically, Raphael testified that he lived with Bradford to make money selling marijuana and cocaine, and to "look after" Bradford's house (Criminal Case, Doc. 249, pp. 214-216).   Raphael further testified

10

generally about Bradford's distribution of marijuana and cocaine, and that Raphael would receive "family discounts" on drugs that he would bag at Bradford's house and later distribute (Criminal Case, Doc. 249, pp. 214-226).   Raphael also accompanied Bradford on Bradford's drug deals for protection and would serve Bradford's customers when Bradford was not at home (*Id.*).   Raphael testified about Bradford's gun collection and stated that Bradford would often lend Raphael his guns if Raphael needed them (*see generally*, Criminal Case, Doc. 249, pp. 228-259).   Raphael also assisted in moving and hiding Bradford's firearms; and Bradford later asked Raphael to "take responsibility" for the guns when they were both arrested (*Id.; see also* Criminal Case, Doc. 249, pp. 271-273).

Jeremy Harris testified consistently, confirming that Bradford gave him a "family discount" on marijuana, that Jeremy would accompany Bradford on Bradford's drug deliveries and serve Bradford's customers if Bradford was not at home, and that Bradford had many firearms (*see generally*, Criminal Case, Doc. 251, pp. 98-179). The Government also admitted a video recorded on Raphael Harris' cellphone depicting Bradford sitting on his couch counting money with guns spread throughout his dining room (Criminal Case, Doc. 249, pp. 287-291).   Raphael described this video as a "typical" or "normal day" at Bradford's house (*Id.*).   At sentencing, the sentencing judge, Judge Herndon described this video as "stunning" and "reminiscent of the Scar Face movie where Mr. Bradford was just involved with a group that sort of anything goes with respect to drugs and guns and that video would make one believe that they found it thrilling to use these guns in support of their drug trade."  (Criminal Case, Doc. 295, pp. 49-50).

In sum, even without the testimony of Bradford's prior bad acts, or any additional impeachment or rebuttal evidence[5] from Bradford, the evidence produced against Bradford at trial was overwhelming and supports the reliability of the jury's guilty verdict.[6]  Even, assuming, that Stobbs' alleged performance was deficient, Bradford cannot show that "there was a reasonable probability that the result of the proceeding would have been different" had Stobbs performed differently.  *Taylor*, 448 F.3d at 951.  Accordingly, Bradford cannot demonstrate prejudice, and his claim must fail without further analysis into Stobbs' performance.  *Id.* at 949.

Furthermore, a review of the transcript from Bradford's sentencing hearing shows that Judge Herndon did not add an extra five years to Bradford's sentence simply because of the alleged errors Bradford complains of.  Instead, the transcripts indicate that Judge Herndon relied on the "serious nature" of Bradford's criminal history in addition to

---

[5] While Bradford generally complains that Stobbs did not properly investigate the case file or otherwise conduct due diligence into the Government's witnesses, Bradford does not proffer what additional evidence, if any, he claims Stobbs should have found or used in connection with the trial, presumably for impeachment or rebuttal purposes.

[6] The sentencing judge likewise found the evidence at trial "overwhelming."  *See* Criminal Case, Doc. 295, pp. 14-15 ("I fully understand that Mr. Bradford does not accept the jury verdict in this case, that the problem that Mr. Bradford has is that the evidence against him at trial was overwhelming against him.  I understand that really the only position that he can take at this point is that everybody was lying and everybody was not telling the truth when they testified against him.  We had a trial where his girlfriend testified against him, his relatives testified against him, the other people involved in the case with him testified against him. We had a confidential informant who was actually being paid by ATF who testified against him, and we have a video that is not of him committed the crimes necessarily that -- in other words, in the Indictment, but certainly corroborate much of what is charged; the video of him dancing around the guns and pointing to contraband. You know, there is just overwhelming evidence in this case against Mr. Bradford. The people that testified gave testimony that was consistent with other witnesses. It is just a case of overwhelming evidence").

Bradford's personality, which Judge Herndon described as "calculating", "dangerous", and "greedy", as well as Bradford's violent acts (Criminal Case, Doc. 295, pp. 49-52) in imposing Bradford's sentence.

Judge Herndon also appeared to rely heavily on the videotape evidence presented at trial in reaching his decision (*Id.*). Bradford does not argue that this videotape was inappropriately submitted to the jury or that it should not have been viewed by his sentencing judge. Therefore, even if the sentencing judge should not have considered the additional testimony Bradford complains of, he cannot show a reasonable probability that the outcome of Bradford's case would have been different. The remaining evidence before the Court, and particularly the videotape Judge Herndon found so disturbing, would not have changed the outcome of Bradford's sentencing and the addition of five extra years to Bradford's sentence.

Further, the Court finds it significant, and contrary to Bradford's characterization of Attorney Stobbs' performance at his sentencing hearing, that Attorney Stobbs' made a compassionate appeal to the Court to speak with Bradford directly at sentencing (Criminal Case, Doc. 295, pp. 33-34). Indeed, Stobbs was confused as to why Bradford refused to work with probation and was unwilling to participate in the pre-sentencing mitigation report, but further asked Judge Herndon to speak directly with Bradford in the hopes that Judge Herndon would see the extent of Bradford's intelligence, which Stobbs described him as "exceptionally bright" (*Id.* at p. 34).

Similarly, Stobbs' framing of Bradford as a "gun nut" or enthusiast at trial and sentencing does not indicate prejudice or any alleged negative opinions Stobbs may have

13

held of Bradford.  Instead, in reviewing the context surrounding this framing at trial it is clear that Stobbs' framing of Bradford as an enthusiast provided a reasonable, and alternative, narrative which the jury could have relied on in acquitting Bradford on Count 2 (possession of a firearm in furtherance of a conspiracy) because this narrative showed that Bradford had alternative reasons for possessing his large quantity of firearms separate from his drug dealings.

In conclusion, upon review of the record, the overwhelming evidence of Bradford's guilt simply cannot support an ineffective assistance of trial claim against Stobbs, and Bradford's petition must fail.

## <u>Disposition</u>

For the reasons articulated above, the Court **DENIES** Bradford's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. The Clerk is **DIRECTED** to enter judgment in favor of the United States and against Petitioner David L. Bradford.

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court entering a final order adverse to a petitioner to issue or deny a certificate of appealability.  28 U.S.C. § 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  This standard requires the petitioner to demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); see also *United States v.*

*Fleming*, 676 F.3d 621, 625 (7th Cir. 2012). The undersigned concludes that Bradford has not satisfied his burden of showing that was entitled to relief on the merits of his petition. Reasonable jurists would not find this conclusion debatable. Accordingly, the Court **DECLINES** to issue a certificate of appealability.

 **SO ORDERED.**

 Dated: May 5, 2021

 _____
 DAVID W. DUGAN
 United States District Judge

15